Court, please. My name is Lee Steers. I represent Marsh Aviation here today. As you know, there are two parts to this case. First, I'd like to reserve three minutes, if I may. Okay. Thank you. The first part is a question of whether or not Gallagher owed a duty to Marsh. The second part is whether or not the court erred in dismissing the claims on judicial stoppage. With respect to the duty issue, I want to call to your attention three aspects. First, Gallagher argued that it owed a duty to its, quote, client, unquote, whereas the law in Arizona clearly says, quote, in Darner v. Universal Underwriters, the duty is concisely stated by the Supreme Court of Hawaii, an insurance agent owes a duty to the insured to exercise reasonable care, etc. Well, it depends what an insurance agent is, which depends on state law, right? Well, in state law in Arizona, no more is there a definition of insurance agent. Neither is there a definition in Arizona any longer of an insurance broker. Rather, both of those definitions were abrogated by legislation in 2001, and in that legislation, the only definition of an insurance professional now extant in the statutes of Arizona is a definition of an insurance producer, quote, unquote, Your Honor. Your briefing goes into that in some detail. I'm sorry? Can you tell us, where does that leave us? Why is that statutory change important? I don't think it is. I don't think it is at all. Because Arizona law, it seems to be, forgive me for interrupting, but Arizona law is pretty consistent. You have to look at what functions were being served, right? That's right. And the seminal case of Darner was decided, Your Honor, in 1984. This legislative enactment that I'm talking about was in 2001. Right. So you have to extrapolate that the ruling in Darner pre that legislative change. But Gallagher had no direct relationship with Marsh. Is that right? Gallagher issued. Nobody from Marsh ever talked to Gallagher. They never had any dealings with Gallagher. But that Marsh, excuse me, Gallagher issued the policy. Right. But he never advised Marsh. My reading of the record is that Gallagher's contact was with Hardy. That's correct. And not directly to Marsh. And Gallagher argues, because I didn't talk to Marsh, Marsh is not my client. That's irrelevant. Under Darner, the question is who the duty is owed to the insured. And who owes the duty? An insurance professional. Who wrote the policy? Let me ask the question a little bit different way. What do you claim, allege, that Gallagher did or didn't do with respect to any duty it might have owed Marsh? Your Honor, please, that gets to the question of whether or not the duty was breached. Right. That's what I'm asking you. How did Gallagher breach the duty? Well, respectfully, that's not before the Court, because the Court held as a matter of law that Gallagher did not owe a duty to Marsh in the first instance. So we never reached. Well, let's assume, you know, we can affirm on any basis supported by the record. So we'll go with your assumption that Gallagher had a duty. Now, how did Gallagher breach that duty? Gallagher delegated the obligation to satisfy its duties as an insurance professional to Hardy. So the question becomes, Your Honor, how? Well, what was that? What's wrong with that? Nothing. Nothing at all. So I ask you, how did Gallagher breach its duty? Gallagher breached its duty because Hardy breached its duty to whom Gallagher had delegated the obligation to perform the duties of an insurance professional. Your case rests on the premise that Hardy was Gallagher's agent. Gallagher's agent. That's right. That's right. So anything Hardy did is a tragedy. Agent, yes, in the agency sense. Well, don't you have to make some showing then that Gallagher knew that Hardy was unqualified or something like that? I respectfully don't believe so, Your Honor. The only question is what – In other words, if I recommend a lawyer to you and you go to that lawyer, as far as I know if that lawyer is, you know, has an A.V. Martindale-Hubbell rating, I mean, why am I liable for any malpractice of that lawyer? I believe that's distinguished, Your Honor, because you did not owe any duty to me. No, but I undertook a duty to advise you. Pardon me? I undertook a duty to advise you on who to hire. If you did undertake the duty, then you breached the duty. How did I breach it? If I recommended somebody, you know, who's got a top professional rating? I'd say, Your Honor, in the context of this case, that's a fact question for the jury based on professional expert testimony that was not allowed in this case because the law in Arizona says expert testimony is not permitted in order to advise the court whether or not a duty exists in the first instance. So I'm a little bit handicapped because there's a serious distinction in this case between whether there's a duty in the first instance and whether the duty was breached. And so could I get you to shift gears a little bit? I'm just watching the clock here. And I'm hoping you're going to talk about judicial estoppel.  Because my understanding is that Hardy didn't join this motion that you're talking about now as to duty. That's correct. It only applies to Gallagher. Okay. So can we turn the page and focus on the judicial estoppel argument for this? Please. Thank you very much, Your Honor. The most important thing in the judicial estoppel argument is the court really refused to decide an indispensable issue. You'll recall that Marsh, in its bankruptcy proceeding, filed amended disclosures. One of the paragraphs was paragraph 5.1.10, which in which the disclosure said, we've hired a lawyer to pursue this claim as a result of this fire. Right. And she thought you raised that too late. Right? But I think at the time, before you raised that, I think in response to the original summary judgment motion, this is where I'm trying to get at, what did you argue in response to the original summary judgment motion about on the question of whether or not your client had concealed or failed to disclose that property? As I said in the brief, Your Honor, and before the trial court, the answer to your question is nothing. I went to look at the disclosures. Well, wait a minute. Didn't you disclose the existence of the property? Oh, of course. We just ---- I'm trying to figure out how the wool got pulled over anybody's eyes. What was disclosed, I think, without question, and this is really for opposing counsel as well, is the existence of the property that was in the hangar. And it seems to me at best there was not an updated schedule to show that the property got damaged or maybe even destroyed. Well, the disclosure says, we've hired a lawyer ---- No, that's a different disclosure. That the trial court did not consider. That's correct. Because it was too late. The original disclosure, let me try it. I'm sorry. The original disclosure said that there was, what, $700,000 in personal property in that hangar. That's right, Your Honor. All right. From the creditor's point of view, what they want to know is how much money is available. As far as they knew, there was $700,000. The claim was for approximately $700,000, so it was basically the same amount of money. That's right. So the question is, you didn't argue this in your brief before us, as far as I know, but I gather you did in the district court, that there was no judicial estoppel because there was no advantage gained from disclosing or not disclosing the claim. Now, are you making that argument or aren't you making that argument? I am making it right now, Your Honor. I apologize to the Court for having failed to bring that to the Court's attention. Counsel, did anybody argue our case law, Ockwin, on the judicial estoppel question? Did anyone argue to the district court about Ockwin and that line of cases from the Ninth Circuit? No, Your Honor. All right. The point I want to make is that—a point I want to make is that I wrote in an affidavit— I went to look at the disclosure in terms of why it wasn't disclosed to the Court before the entry of summary judgment. My affidavit says I went to look at the disclosure. I read it. I simply overlooked paragraph 5.1.10. If I had not overlooked it, I would have called it to the Court's attention. All right. But as I understand the response to that, I mean, I have a certain amount of sympathy with this, because it's an equitable doctrine to begin with, and the other side didn't bring it to the Court's attention, either. But they're going to say, I'm sure, that it doesn't say enough anyway, because it doesn't actually say the claim was ever filed or that it succeeded or anything else. And that leads me circuitously somewhat, Your Honor, back to my original point. A very important question that I asked the Drister Court to answer and she did not is, was the disclosure, if it had been presented before summary judgment, was the disclosure sufficient to withstand summary judgment? If it was, then that implicates Rule 11b-3, because, as you point out, the defendants did not come to court and say, Your Honor, Marsh filed an amended disclosure and here's what it says. But, Counsel, you have a very tough Rule 11 argument. I beg your pardon? Because Rule 11 requires — you have a very tough Rule 11 argument, because that would require a showing of bad faith. And if your client missed it and made the goof, made the error, pretty tough to argue that the opposing counsel or opposing party has got a Rule 11 culpability. Well, if Your Honor, please, in the Ninth Circuit case of Vander Hart that I cited, I grant you that's a Rule 11b-2 matter. But Vander Hart didn't say anything about bad faith. Vander Hart said that counsel for the defendant had simply misrepresented the controlling law to the court. Yes. But to misrepresent means that there's an awareness, implicitly an awareness of what the correct state of affairs was. And it seems to me, if I'm reading the record, and opposing counsel can respond as well, but it seems to me everybody missed it. There was in fact an amended schedule that showed that counsel had been hired to pursue a claim related to the fire. And the district judge, here's the important point, the district judge didn't know that. She didn't know that. So that's why I asked you to turn that page and look at what she had in front of her at the time. And the problem I've got is it seems the property, and hence the value of the property, was disclosed. Which is true, Your Honor. But I can't overcome the fact that I failed to disclose. Well, you've been very candid in that regard. And I appreciate that. But respectfully, Vander Hart doesn't say anything about bad faith. And Vander Hart implicitly says you're supposed to know the law when you represent it to the court. Let me go back to what Judge Christian asked you before. What did you argue in the district court on the judicial estoppel issue? Nothing, because I didn't have anything. You didn't argue anything. You said, fine, I'm estopped. I didn't. No, Your Honor, I didn't say that. But clearly, if you look at the transcript, I did not know about the disclosure. I know that, but so what did you argue? I didn't. I didn't. I did argue that there was. Well, I don't think that's true. I think that you argued that there was no intent to conceal anything. That's exactly right. And that the opposing, I think, I mean, I look back at it, and that the opposing and let's correct me if I'm wrong, that the opposing party, you had not gained an unfair advantage in the bankruptcy action. And I specifically argued that by arguing that this was a full pay. This was a Chapter 11 plan. And it was a full pay plan. So under any circumstances, the creditors weren't going to lose anything. Right. So that just goes back to the New Hampshire factors. And opposing counsel have a chance to respond when we hear from her. Okay. If you want to reserve time, you should do it now. Thank you very much. Good morning, Your Honors. Kelly Hedberg on behalf of Arthur J. Gallagher. There are two issues here. Are you arguing just for Gallagher? Just for Gallagher. We reserved eight minutes, and Hardy has reserved seven. Okay. And since there were two issues, I'd like to probably spend the most time on duty, but I do want to address the judicial estoppel argument as well. Okay. Go ahead. So there were two issues with respect to duty for Gallagher. And that is that the undisputed facts showed that Gallagher was acting on behalf of travelers. And two, that the undisputed facts show that at no time did Gallagher act inconsistent with that relationship. Is there any indication in the record that the district court had that Gallagher ever had contact with Marsh? None. Well, do you agree with Mr. Stairs that under Arizona law, Gallagher had a duty to Marsh? I do not. And if you look at the cases that were cited after, or that were decided after Darner, they painstakingly go through the relationship between the parties, and then the relationship between the party that's claiming to be owed a duty. And in Napier, which was decided after Darner, it says that the general rule is that a professional does not owe a duty to a non- client absent special circumstances. Had Gallagher acted somewhat inconsistently. Who did Marsh contact about the insurance to begin with? Who did Marsh contact? Yes. Marsh dealt directly through Hardy. I'm sorry, what? Hardy. He contacted Hardy? Who did they contact? They contacted you, right? Gallagher. No, Marsh contacted Hardy. And then Hardy contacted you. Correct. I thought, is that right? He went to Hardy and said, I want some insurance? And the communication, as I understand it, was between Hardy and Gallagher. And your argument is Gallagher never had any direct contact with Marsh, right? Correct. Hence, no duty. Correct. But Hardy had some ongoing relationship with Gallagher. But Hardy was acting as Marsh's agent, right, when they talked to you? Hardy was acting as Marsh's agent. And Hardy didn't join the motion, right? Correct. On duty, that only gets Gallagher out, right? Correct. So we have to get to judicial estoppel to talk about Hardy. Correct. It's my understanding. Yes. Thank you. You're welcome. I want to address judicial estoppel. Please. With respect to the judicial estoppel argument, I think that the timeline is extremely relevant here. And that is back in 2009 is when Marsh actually filed for bankruptcy. And when they filed their personal property schedule, they listed the property that they're now alleging was contained in Hangar J-4 at scrap value. I mean, that word means something. But there was an amount of money attached. How much was that? They were unable to tell us during deposition testimony how much of that material was. I'm not asking deposition. What was the schedule there in the 2009 document? The schedule contained more property than just the property in Hangar J-4. There was no money, no amount attached to that property? Correct. So to say that they disclosed the $700,000 claim is not accurate. But, counsel, neither is it accurate to say under our case law, with all respect, that just the knowledge of the claim, the civil claim, and the failure to disclose to update the bankruptcy schedule is sufficient, right? I don't think anybody cited Ah Quinn to the district court, did they? No, but we did cite Hamilton, which Hamilton says that if the debtor has enough information then to know a potential claim, not even an actual claim. That's not the updated case law. We've interpreted that, right? And they did argue that they didn't have an intent to conceal it. Hardy, now, I'm talking about. Again, this is just limited to Hardy, and I recognize that you represent Gallagher. But isn't it an incomplete analysis at best? Not if you look at the totality of the convenient errors. So not only do they claim the property at scrap value, then when the claim, when the property is destroyed and they make a claim for the fair market value to travelers, they don't disclose that property claim. What exactly is the difference between scrap value and fair market value? If it only has scrap value, then the fair market value is scrap value. Well, the fair market value is not scrap value. Why? Was that ever determined? Do we know that? I mean, if you say what is this, what would this sell at if it's not only worth, if it has no value except to scrap, then it would sell as scrap. If it has value other than scrap, then it would sell at whatever it would sell at. Sure. Scrap value, though, is when material is sold just for its material content, not for its productive use, whereas fair market value. That's its fair market value. What is this worth? It's worth scrap. Yes. I think the question is how is fair market value defined in the bankruptcy proceeding? The only, well, I don't know that it is defined in the bankruptcy, not that we found, but these are terms of art, and when you're saying something is scrap, you're saying something is throwaway. Well, you know, the general definition of fair market value is, right, what something would bring when it's exposed on an open market between a buying seller and a willing buyer, right? For productive use, correct, which is different than scrap value. Right. Now, but as Judge Berzon says, if everybody accepts it as scrap, then the fair market value is what the buyer and the seller think scrap is worth, isn't it? Not if they intended to sell it on the open market for its productive use. Well, open market for scrap. There's an open market for scrap. Well, right, but that's not what ended up happening here. Well, nothing ended up happening because they never got anything on the insurance, right? Sure, they didn't get anything in the insurance, but then they went on to sue the co-tenants who allegedly caused the fire, and they did that before the second amended plan for RE-ORG disclosing the contingency fee. Here's the problem. The op-quin case law that we've got, it isn't a function of rewarding a litigant who fails to disclose the civil claim in bankruptcy. The reason that that case law is pretty clear, the problem is, right, if the claim is lost, that harms the debtor, the bankruptcy debtor's creditors. They lose access to that potentially valuable asset, whatever the value winds up being, right? Correct. And that seems to have gone completely unaddressed here. But it hasn't gone unaddressed. The benefit was that their creditors were held at bay. The city of Mesa, by the time they filed that second amended plan for RE-ORG, and it actually appears in the second plan for RE-ORG, was owed over $100,000. So there were people. You said that the bankruptcy was filed in 2009, right? Mm-hmm. So you think the bankruptcy creditors were held at bay because of something that happened here? They were held at bay by the nondisclosure, the nondisclosure of ongoing litigation. If they thought there was a whole, I mean, if they thought anything, it was that there was a whole bunch of property in there that was worth something. Whatever the something was, and whatever it's worth, it's the same thing that it would be worth after the fire as a claim. I mean, it's not going to be worth more as a claim than it would be worth at the time the bankruptcy schedule was filed. So the property wasn't hidden. The appearance was, is that these claims were not being disclosed and that Marsh was not being forthcoming with its amendment of the disclosure. All right. So then we get to the fact that, in fact, it did say that there was a possible claim in the amended or the supplemental disclosure. And Marsh missed it, and you either missed it or saw it and didn't reveal it. So what troubles me is that judicial estoppel is an equitable doctrine, and it is a way of sort of not reaching the truth of what actually happened because somebody did something wrong, and to refuse to consider the question of whether somebody did something wrong because when neither side brought this thing forward and when it wasn't all that complicated to do it on the motion to reconsider, it's hard for me to understand, frankly. And I will just conclude. I mean, why should you get an advantage, an equitable advantage, from what is at worst a mistake and might have been a mutual mistake and might have been you're not bringing something forward? And let's leave Rule 11 out of this, because I understand there is at least some argument that it wasn't an adequate disclosure, but it was some sort of a disclosure. Well, and I will close with I believe it was another misstatement, because at the time that that disclosure was or that amended plan was filed, there was an actual claim being litigated. It was not an investigation of a potential claim. It was an actual claim that was being litigated, and you can find that at ER 160, paragraph 25. But it still wasn't money in hand. But it was another misstatement. All right. Well, thank you very much. Let me address a small fact. The personal property schedule in the initial bankruptcy filing, Schedule B, shows the Air Force OV-10 program inventory at scrap value of $25,945. The inventory prepared by Greer and Kirby, by the way, I'm Robert Greer. I represent Hardy Insurance. I appreciate the value difference that you've pointed out, and we've got that. And it's $385,000 once they go through. Yes, Counsel, but here's the problem I've got. There's, well, there's twofold, and maybe you could help me out in the time available. One is there seems to have been no discussion of our line of OQIN case law that talks about whether or not there was an intent. And that's consistent with New Hampshire. We didn't make it up whether there was an intentional failure to disclose and whether any real gain was achieved by that. And I don't see how they particularly benefited here, particularly because the concern is whether or not the bankruptcy creditors are going to be harmed. The second thing is kind of minor, but it is bugging me. And that is there was the complaint filed by the plaintiffs misstated the ownership-slash-leasehold interest in the hangar and first claimed it in Marsh. Of course, it wasn't Marsh's. It was Stillwell's. And we're just talking about the leasehold interest in the hangar. And that seemed to be significant to the district court, and I can't figure out why. I feel like I'm missing something on that. Let me address that first. Sure. In order for there to be an insurable interest in the property, in real estate property, as part and parcel of the main hangar of Marsh Aviation, it had to be in Marsh's name. In order to stretch the duty of the insurance agent to cover all the property owned by Marsh Aviation, they added to the complaint an allegation that hangar J was leased by Marsh Aviation and, therefore, had an insurable interest in Sullivan. But what does it have to do with the judicial estoppel? That's the question. In other words, that's the complaint in this case, but what does it have to do with the judicial estoppel question? Well, it took the position initially that the property in the hangar J was Marsh Aviation's. Right. And why does it matter who the lessee of the property was? Because there's a presumption under Arizona law that if the title of the property is in the name of Mr. Stilwell, the presumption is that the property therein is Mr. Stilwell's and not Marsh Aviation's. Why would that be? I'm sorry? That's a very odd presumption. People store property in other people's property, real estate, all the time. Well, under the lease with the city of Mesa, Mr. Stilwell was not supposed to use it for commercial purposes or store anything but the aircraft that he designated in the lease. But their allegation in the complaint is that Hardy and, I guess, Gallagher, but anyway, well, it's Hardy and Gallagher in the complaint, failed to tell us that we weren't going to be insured over there. And whether that means failed to tell us that those premises weren't going to be insured or failed to tell us that our personal property wasn't going to be insured if we insured it in a premise off-site somewhere more than 1,000 feet away where we didn't hold the leasehold interest, whatever that is, I'm trying to figure out, as is Judge Berzon, how does this influence the district court's judicial estoppel analysis? In reading the district court's judicial estoppel analysis, it relying upon Hamilton noted that there did not have to be any sort of a mens rea type intent to defraud that even, not so much innocent, but a misrepresentation of bankruptcy petition upon which creditors would rely is sufficient for judicial estoppel to apply. Is it your position that you would have prevailed, should have prevailed on the judicial estoppel question even if the court had taken into account the late affidavit from opposing counsel? Yes. Indicating, you know, that a lawyer had been retained? And if so, could you speak to that please? Sure. That's purely a procedural matter. That is, you get one bite at the apple. No, no, no, no. My question is, if she had considered the affidavit, then — Oh, okay. I'm sorry. But I understand your procedural argument. The judge simply said it was too late. Yeah. I get that. My question is, had she chosen to have the district court considered that affidavit, is it your position your team still wins? Yes. Okay. That's because of the language of a potential claim and investigation of a claim when, in effect, there were three claims that followed. Do you think the disclosure still was too anemic, too inadequate? Yeah. Is that it? It disclosed nothing other than I'm looking at something and there might be a claim there, and it attached no value to it. The value in the bankruptcy schedule remained the same both before and after this hypothetical anticipated claim applied. Well, the amount would be the same. In other words, whatever the bank — whatever he would recover for the loss of the property would be whatever the property was worth in the first place. Right? Well, that harkens back to $21,000 in the initial bankruptcy petition. Well, fine. Then it's only worth $21,000. But whatever they are, they're the same. If that is the case — I mean, if he made a claim for $750,000, then he wasn't going to get $750,000 if it was only worth $21,000. Whatever they are, they're the same. So what was he hiding? Sure. If the estoppel applies such that the only value that he can get is $21,000 because that's what he put to the OBD program. Well, the value he can get is whatever it's worth. They're both the same. Right? Whatever it was worth is what he could get in the claim. Whether they're the same or different is kind of irrelevant. No? And whether they're the same — no. That they're the same is what matters, and exactly what the value is doesn't matter that much. Well, I disagree that they were the same. Why is that? Because of the different numbers used in the representation. That's how — But how — he couldn't get any more on a claim than it's worth. But if it's understated — Well, that's true. But if it's understated, that goes to opposing counsel's argument. Yeah. I mean, he couldn't get — Counsel. Counsel. Is it correct — I'm sorry. That's all right. Is it correct that opposing counsel's argued this point? If it's understated on the bankruptcy schedules, that lulls creditors into not going after this asset, whatever the number is. That's true. Right? But that's a different form of judicial estoppel than the one that the judge relied on. It's not the reasoning relied on by the district court. I'm sorry. I think it's not the reasoning relied on by the district court, but I think it's how — I said opposing counsel. I think that's how she gets there with her timeline. Yeah, I think so. Yeah. Regardless of that, it seems to me, Your Honors, that you cannot find that there is an abusive discretion for the trial court to rely on Ninth Circuit precedent, forbidding it to consider alternative arguments that should have been made in the initial summary judgment. But what about an abusive discretion? And, again, I just want to point out that this argument wasn't presented, this case law was not presented to the district court, but is it an abusive discretion to not do — not undertake the Ockwin inquiry? Is it an incomplete analysis? I don't believe so. The court's being asked to adopt an excusable neglect standard for post-judgment relief. And I don't think that it's wise to do that simply as a matter of judicial practice. You don't want to invite a never-ending motion practice. Thanks. Thank you very much. You have two minutes approximately for rebuttal. At the risk of muddying the water, Judge Christian mentioned the value of the property. Scrap in the bankruptcy petition claimed as fair market value. You're correct, Your Honor. It's the same thing in the context. When you file bankruptcy, what the creditors want to know in a Chapter 11 proceeding is, okay, if we're going to approve this Chapter 11, we've got to know what your stuff is worth right now. Well, did you — was the original representation that it was worth $21,000? I beg your pardon? Was the original representation that it was worth $21,000 in the disclosure? The disclosure of scrap was of scrap value. Right. I can't tell you what the totals were. The total of all of the property was greater than $750,000. But my point is this, Your Honor. When you're going to sell something at scrap, that's one thing. That's what they were faced with in the bankruptcy proceeding in 2009. That's what the creditors want to know. What can you get for it right now as scrap? And that's what they put down in the rule — in the Chapter 11 proceeding. Years later, after the Chapter 11 had been approved, they had had an opportunity to keep the stuff as inventory. What a willing buyer and a willing — a willing buyer will pay immediately. You take it out and lay it on the ground and see what you can get for it. That's the question in the bankruptcy context. And the answer is scrap, because you can't wait for any unique buyers to come along shopping for this stuff. Counsel, just quickly, forgive me for interrupting, but your time is just about up. I beg your pardon? Since this is an equitable doctrine, my question is, was there ever any amendment, anything in the bankruptcy court, even after this was raised in Judge Bolton's courtroom, ever any amendment to show the existence of these claims? The only amendment was the paragraph 5 — 5.1.10. May I say, if Your Honor please, counsel says — here's the thing. They're arguing agency. This is not an agency issue. They say Gallagher — they cited you a bunch of cases that are based on agency. That's nothing to do with the question that was asked. Absolutely nothing. I'm understanding your answer is no. There was never an updated disclosure in bankruptcy. I beg your pardon? I thought I answered that. That is correct. Okay. Thank you. That is correct. Okay. Thank you very much. The case of Marsh Aviation v. Hardy Aviation Insurance, et cetera, is submitted and will go on to Edwards v. Ford Motor Company.
judges: Tashima, Berzon, Christen